IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

                                 OPINION AND ORDER

            Plaintiff,

                                  18-cv-804-bbc

     v.

WALMART STORES EAST LP AND WALMART, INC.,

            Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Equal Employment Opportunity Commission brought this lawsuit on behalf of Edward C. Hedican, contending that defendant Walmart Stores East LP and Walmart, Inc. engaged in religious discrimination and retaliation under Title VII of the Civil Rights Act of 1964.  In particular, plaintiff contends that defendant refused to accommodate Hedican's request to not work on Saturdays, which he observed as the Sabbath, and that defendant rescinded its offer of employment in retaliation for Hedican's request for a religious accommodation.  Defendant has filed a motion for summary judgment, contending that it offered Hedican a reasonable accommodation, that allowing Hedican to have every Saturday off would have been an undue hardship and that it did not retaliate against Hedican.  Dkt. #19.  Because I conclude that defendant offered Hedican a reasonable accommodation and has shown that it could not accommodate plaintiff's request to have every Saturday off without incurring undue hardship, I will grant defendant's motion.

      From the parties' proposed findings of facts and responses, I find the following facts

to be material and undisputed unless otherwise noted.

UNDISPUTED FACTS

A.  The Parties and Background

In 2016, plaintiff Edward Hedican was a practicing Seventh Day Adventist.  Hedican observed the Sabbath by refraining from work each week from sundown on Friday night to sundown on Saturday night.

In April 2016, Hedican applied to become an assistant manager at defendant's store in Hayward, Wisconsin.  Hayward is a vacation destination and resort town with many rental properties and vacation homes on its many lakes, and it is especially popular in the summer months.  Hedican had two interviews and a store tour.  Lori Ahern, defendant's market human resources manager, conducted a phone interview with Hedican.  Ahern asked Hedican about his education and past employment, but did not discuss Hedican's availability or scheduling during the phone interview.  About a week later, Hedican had a telephone interview with the Hayward store manager, Dale Buck.  Buck talked to Hedican about the "Walmart philosophy" and asked Hedican about his education and experience, but Buck did not talk about scheduling with Hedican.  During the store tour, Buck told Hedican that assistant managers were expected to work 45 hours a week, with varying schedules and different shifts, but Buck did not talk about specific schedules that assistant managers worked.

On April 28, 2016, defendant made a conditional offer of employment to Hedican

as an assistant manager. Defendant scheduled Hedican to start a training class in June 2016. If he had completed the training program successfully and passed his preemployment screening, Hedican would have begun working in the Hayward store as an assistant manager with the starting salary of $45,000. According to the offer letter, Hedican would begin to acquire paid time off after he had worked for defendant for one full fiscal year.

On May 1, 2016, Hedican accepted defendant's conditional offer of employment by email, and informed defendant that he was a Seventh Day Adventist, he observed the Sabbath and he would not be able to work any Saturdays until after sundown. He stated that he was available any other day of the week and could be available after sundown on Saturday nights if needed. This was the first time that Hedican told defendant that he had restrictions with respect to scheduling. Hedican told defendant that he would wait to complete the new hire paperwork until defendant confirmed that he would not be required to work Saturdays.

When market human resources manager Ahern received Hedican's request for accommodation of his Sabbath, she sent Hedican's email to Hayward store manager Buck for his information. Ahern did not talk to Buck about the email at that time, and Buck did not talk to Hedican about his religious accommodation request. Ahern consulted defendant's religious accommodations guidelines. Defendant's policy at that time was to provide religious accommodations for applicants or associates to comply with their sincerely held religious beliefs unless the requested accommodation would pose an undue hardship on the business. Defendant's "religious accommodation guidelines" list the following as

accommodations which may be necessary to accommodate a request for time off or a schedule change:  flexible arrival and departure times; staggered work hours; and voluntary swaps with other associates.  The guidelines state that if a salaried manager on a rotating schedule requests a schedule that would allow him or her to never work a particular day, the human resources representative or manager should determine the frequency with which the requestor is scheduled to work on the particular day in question.  The guidelines recommend that the human resources representative or manager should advise the individual that he or she may be able to arrange a shift swap with another manager and that defendant can help facilitate that by providing an email or other means of communication.  The guidelines also advise that all managers should work collaboratively and swap shifts as needed for personal or religious reasons.  Finally, the guidelines state that whether an accommodation imposes an undue hardship must be determined on a case-by-case basis, and that the objections or resentment of other associates is not an undue hardship.

On May 2, 2016, Ahern sent Hedican an accommodation request form to fill out. The form referred to disability accommodation and medical needs, and did not refer to religious accommodations specifically.  Several of the questions on the form are irrelevant to religious accommodation requests.  However, defendant did not have a specific form for religious accommodations and used some of the same forms in the religious accommodation process as it did for disability accommodations.  Ahern told Hedican that defendant's Americans with Disabilities Act department would handle his accommodation request.

Hedican returned the accommodation form to Ahern by email that same day,

requesting "No Saturday workshifts for religious circumstances/beliefs . . . [f]or the entire term of employment." (At his deposition, Hedican stated that he would not have been able to work on Fridays after sundown either, but agreed that his request to defendant was for Saturdays off.) Ahern forwarded Hedican's request to defendant's Accommodation Service Center. On May 11, 2016, the center returned Hedican's request for a religious accommodation to Ahern, stating that the center did not approve accommodations for religious beliefs and that Ahern should handle the request. Ahern felt comfortable handling the request, as she had previously addressed other requests for religious accommodations, including transferring an hourly manager into a position where he would not have to work Saturdays before sundown.

Ahern considered several factors in determining whether defendant could accommodate Hedican's request for Saturdays off as an assistant manager at the Hayward store. She considered defendant's expectations for assistant managers, the assistant manager's role at the Hayward store in particular and the staffing and other needs of the Hayward store. (Ahern testified at her deposition that she discussed Hedican's request and how it would affect the store's operation with Buck the store manager, including how the request would affect stocking and recovery, coverage for management calls, coverage overall and rotations. However, Buck testified at his deposition that although he may have had a conversation with Ahern about Hedican's request, scheduling or other hourly supervisor positions that were available in the store, he could not recall the conversation.)

Assistant managers, along with the store manager, play a key role in managing

defendant's stores. The assistant manager's duties include hiring, training, mentoring, assigning and evaluating hourly associates, overseeing the stocking and rotation of merchandise, creating effective merchandise presentation, insuring accurate pricing, monitoring expenses, asset protection and safety controls, overseeing safety and operational reviews, analyzing reports and modeling proper customer service. All assistant managers are assigned to an area of responsibility within the store, where they are responsible for driving sales, supervising and developing hourly associates, meeting profit goals, assessing community needs and economic trends, participating in community outreach programs and insuring compliance with company policies. Areas of responsibility include: apparel; fresh; consumables; hard lines; entertainment; backroom; and overnights. Within each area of responsibility are multiple departments. For example, "apparel" includes clothing and shoes; "fresh" includes bakery, deli, meat and produce; and "overnights" includes cleaning, maintenance and stocking. Most departments have a department manager who reports to the assistant manager and who supervises associates, tracks inventory and verifies price accuracy. Store managers and assistant managers are salaried and exempt from overtime. All other store associates, including department managers, are paid on an hourly basis and eligible for overtime.

Defendant requires its assistant managers to be familiar with all aspects of its operation. To achieve this, assistant managers are not assigned to any area on a permanent basis. Instead, they are rotated through different functional areas, typically on an annual basis, so that they may learn or refresh skills in all aspects of the business. Annual rotation

gives assistant managers experience in each area of store operations, which allows them to cover for one another and to develop skills necessary to advance with defendant. Timing of the rotation of the areas of assistant managers is at the discretion of the store manager. It is possible to have an assistant manager in an area for more than a year, and defendant has allowed an employee to work in the same area for up to six years. However, defendant discourages store managers from keeping assistant managers in a position for too long. At the Hayward store, store manager Buck typically rotates assistant manager assignments each February, though he has kept an assistant manager in an area for longer than one year due to business needs. For example, if an assistant manager is hired during the summer months, Buck may decide not to rotate that manager to a new area in February. (Plaintiff disputes whether defendant required assistant managers to rotate to different areas of responsibility, and points out that defendant does not have a written policy requiring store managers to rotate assistant manager to different areas of responsibility every year. However, the dispute is not genuine, as plaintiff has cited no evidence to dispute defendant's assertion that it was an expectation and practice that store managers would rotate through all areas of responsibility and that no assistant managers are permanently assigned to an area. Plaintiff also has not cited evidence to dispute Buck's assertion that he rotated assistant managers annually unless there were specific business needs that dictated otherwise.)

Defendant determines the number of salaried managers at a given location by the store's sales volume. In 2016, the Hayward store was allowed one store manager and eight assistant managers. When the Hayward store was fully staffed with assistant managers, two

assistant managers were assigned to overnights and the other six were each assigned to different daytime functional areas (fresh, consumables, apparel, hard lines, entertainment and backroom).  The assistant managers assigned to overnight rotation were scheduled to work four days on, three days off, from 8 p.m. to 8 a.m.  Assistant managers in the other areas of responsibility worked five days a week.  The days and times varied, but fell into one of three shifts:  7 a.m. to 5 p.m.; 8 a.m. to 6 p.m.; or 11 a.m. to 9 p.m.  The Hayward store was open 24 hours a day, seven days a week, and an assistant manager's schedule usually varied from day to day and week to week.  Generally, Buck made the schedules about three weeks in advance, sometimes more.  When assistant managers rotated to a new area of responsibility, they also rotated to a new schedule designed to maximize their efficiency and impact in that new area.

Different areas of responsibility had different variables that affected staffing needs, including traffic patterns, services provided, inventory review schedules, shipment delivery days and the number and type of employees.  Defendant does  not have a policy requiring assistant managers to work on Saturdays, but defendant expects assistant managers to be available to work at any hour of any day, in case something happens in their area of responsibility that the assistant manager needs to take care of on a given day or time.  At the Hayward store, Buck required assistant managers to work on Saturdays, although every assistant manager was not required to work every Saturday.

In 2016, the Hayward store lacked a full staff of associates, which required the assistant managers to work more to cover the store's needs.  Fridays and Saturdays were

usually the busiest days for the Hayward store. Friday was usually the highest sales day of the week, and Saturday was the busiest in terms of the number of people coming into the store, services to customers, restocking shelves, bakery and deli production and the number of arriving shipments to be unpacked. Frequently, there were less experienced associates working on Saturdays, especially during the summer season, because some associates were new, temporary, seasonal or worked only on weekends. This meant that managers had to oversee associates more closely on the weekends than they might on other days of the week.

During the summer, the Hayward store had customers visiting from out of town who would have additional questions and need help finding products in the store, which could require management assistance. The Hayward store also offered specialty services, including hunting licenses, fishing licenses, gun sales and a separate liquor store which required staffing management coverage during breaks and busy times. (Plaintiff attempts to dispute some of these facts by stating that Ahern could not remember details at her deposition regarding, for example, how many temporary associates worked at the Hayward store in 2016, how many out-of-town visitors required management assistance or how many associates were scheduled in each department. However, plaintiff has failed to submit any evidence to refute Ahern's or Buck's sworn statements about the general operation and needs of the Hayward store.)

Usually about half of the Hayward store's assistant managers were scheduled to work on any given Saturday. The other half were not scheduled. Between July 1, 2016 and June 30, 2018, each assistant manager at the Hayward store was scheduled to work on more than 60% of Saturdays on average. The assistant manager with the fewest scheduled Saturdays

during those two years was scheduled for 48% of all Saturdays, while the assistant manager with the most scheduled Saturdays was scheduled for 82% of all Saturdays. Some areas of responsibility may lead to long stretches without frequent Saturday work, but all assistant managers worked Saturdays eventually as they rotated through different areas of the store. Weekends are the days that assistant managers most frequently request off, and store manager Buck tried to give all assistant managers Saturdays and Sundays off on occasion.

If the Hayward store was short an assistant manager, Buck tried to cover the hours by asking other assistant managers to come in early or stay later, by asking an assistant manager to come in on his or her day off or by working the shift himself. Buck would sometimes have to deny an assistant manager's request for time off if there were not enough assistant managers with experience in the requesting manager's area of responsibility.

After considering the above information, Ahern concluded that assistant managers at the Hayward store must be available to work on Saturdays. The latest time for sunset in the Hayward area is around 9 p.m., during the summer months, and the earliest sunset is around 4:30 p.m. This meant that during the winter months, Hedican would have been unavailable from 4:30 p.m. or 5:00 p.m. on Fridays to 4:30 or 5:00 p.m. on Saturdays in some weeks. During the summer months, he would have been unavailable from 8:30 or 9:00 p.m. on Fridays to 8:30 or 9:00 p.m. on Saturdays in some weeks. Ahern concluded that accommodating Hedican would impose a hardship on defendant because the store would lack management coverage on Saturdays, which could lead to a loss in customer service and sales.

Ahern did not think that Hedican would be able to swap shifts with other assistant managers because the number of people available to swap shifts was so small that there might not always be someone available to take Hedican's Saturday shifts. At least half of the eight assistant managers would likely be scheduled on any given Saturday, and the other three, not including Hedican, may have plans. She also did not think allowing Hedican to use personal time on Saturdays was an option because Hedican would not have personal time available during his first year of employment, and his taking the time off would still leave defendant having to staff the store with other assistant managers. Ahern concluded that having Hedican work the overnight shift and giving him a more flexible starting time to account for the time of sunset would not be a viable accommodation because having to deal with an ever-changing start time for the overnight manager would be a logistical hardship. She also concluded that even if Hedican's schedule could be accommodated in the overnight shift, he would have problems when he rotated to another area of responsibility.

On May 18, 2016, Ahern sent Hedican an email denying his religious accommodation request to have every Saturday off indefinitely and rescinding the job offer. Ahern stated, "Please advise me of any interest that you may have in other positions in the store and I can assist you in the application process for them." Ahern and Hedican later spoke on the phone. Ahern told Hedican that there were non-salaried supervisory positions for which he could apply and that Ahen could help him apply for those. Those positions would have been full-time, non-salaried positions and would have paid less than the assistant manager role, but they would have provided the opportunity for overtime compensation and would not

11

have required Saturday work. (Neither side put in evidence about how much the other positions would have paid.) She stated that there were no assistant manager positions for which Hedican could have every Saturday off, and that it would not be fair to other assistant managers to give one assistant manager every Saturday off. Hedican told Ahern that he could work after sundown on Saturdays, that he was flexible every other day of the week and that he could cover days that other assistant managers needed off that were not Saturday. Ahern did not offer to accommodate Hedican by proposing a modified schedule, a flexible arrival time or potential shift swaps with other assistant managers. Hedican did not investigate other open positions and never contacted Ahern to discuss the open positions.

OPINION

Title VII prohibits a prospective employer from refusing to hire an applicant in order to avoid accommodating a religious practice that it could accommodate without undue hardship. 42 U.S.C. § 2000e-2; 2000e(j); EEOC v. Abercrombie & Fitch Stores, Inc., 575 U.S. 768 (2015). Title VII also prohibits employers from retaliating against employees or applicants for opposing any unlawful employment practice. 42 U.S.C. § 2000e-3. In this case, plaintiff's brings both a failure to accommodate and a retaliation claim against defendant. However, the retaliation claim is simply a repackaging of the failure to accommodate claim and is based on the same allegations and arguments, so there is no need to analyze the claims separately.

To survive summary judgment, plaintiff must submit evidence of a prima facie case

of religious discrimination, meaning evidence that (1) his bona fide religious practice conflicted with an employment requirement, (2) he notified the defendant of the practice and (3) defendant rescinded his job offer because of plaintiff's religious practice. Porter v. City of Chicago, 700 F.3d 944, 951 (7th Cir. 2012). If plaintiff establishes a prima facie case, the burden shifts to defendant to show either that it offered plaintiff a reasonable accommodation or that it could not do so without undue hardship. Id. In this instance, defendant assumes that plaintiff can establish a prima facie case. However, defendant asserts that (1) it offered plaintiff a reasonable accommodation; (2) plaintiff did not make a good faith effort to engage with defendant about the accommodation defendant offered; and (3) plaintiff's preferred accommodations would have imposed an undue hardship on defendant.

A. Reasonable Accommodation

Defendant contends that it offered plaintiff a reasonable accommodation by notifying him that there were open hourly management positions that would not require Saturday work and by inviting him to apply for those positions. "A reasonable accommodation is one that 'eliminates the conflict between employment requirements and religious practices.'" Ansonia Board of Education v. Philbrook, 479 U.S. 60, 70 (1986). See also Abercrombie & Fitch, 575 U.S. 768, n.2 (accommodating an employee's religious practice means "allowing the plaintiff to engage in [his or] her religious practice despite the employer's normal rules to the contrary").

Plaintiff contends that defendant's communication regarding alternative positions was

not a reasonable accommodation for two reasons. First, plaintiff says it was not reasonable for defendant to offer plaintiff only the opportunity to apply for a position and not offer him a job. However, several courts have concluded that offering an employee the opportunity to apply for alternative positions that would accommodate their religious practice can be a reasonable accommodation. See, e.g., Wright v. Runyon, 2 F.3d 214, 217 (7th Cir. 1993) (giving employee opportunity to bid on jobs that would have accommodated his religious practice was reasonable accommodation); Bruff v. North Mississippi Health Servs., Inc., 244 F.3d 495, 502 (5th Cir. 2001) (offering to give employee 30 days to find another position that would not conflict with religious beliefs was reasonable accommodation); Shelton v. University of Medicine & Dentistry of New Jersey, 223 F.3d 220, 227 (3d Cir. 2000) (offering to meet with employee to discuss other available positions that would resolve religious conflict was reasonable accommodation); Telfair v. Federal Express Corp., 567 F. App'x 681, 684 (11th Cir. 2014) (giving employees opportunity to apply for open positions was reasonable accommodation). Therefore, the fact that defendant offered plaintiff only the opportunity to apply for open positions, as well as help in doing so, does not render defendant's proposed accommodation unreasonable.

Plaintiff also argues that defendant's proposed accommodation was unreasonable because the hourly management positions would have paid less than the assistant manager position that plaintiff was offered. Plaintiff is correct that, in some circumstances, an employer's offering a different position with lower pay and benefits might not be a reasonable accommodation. See, e.g., Porter, 700 F.3d at 952 ("Had changing watch groups

14

affected Porter's pay or other benefits, a much more rigorous inquiry would be required."); Rodriguez v. City of Chicago, 156 F.3d 771, 776 (7th Cir. 1998) (noting that shift change or job transfer may be reasonable accommodation "particularly when such changes do not reduce pay or cause loss of benefits"); Wright, 2 F.3d at 217 ("A much more searching inquiry might also be necessary if Wright, in order to accommodate his religious practices, had to accept a reduction in pay or some other loss of benefits.").

On the other hand, Title VII does not require employers to accommodate the religious practices of an employee in exactly the way the employee would like to be accommodated. Philbrook, 479 U.S. at 68. Title VII also does not require employers to accommodate an employee's religious practices in a way that "spares the employee any cost whatsoever." Tabura v. Kellogg USA, 880 F.3d 544, 550–51 (10th Cir. 2018) (citation omitted). See also Getz v. Pennsylvania Dep't of Public Welfare, 802 F.2d 72, 74 (3d Cir. 1986); Brener v. Diagnostic Center Hospital, 671 F.2d 141, 145-46 & 146 n.3 (5th Cir. 1982) ("A reasonable accommodation need not be on the employee's terms, only."). "[A]ny reasonable accommodation by the employer is sufficient to meet its accommodation obligation." Philbrook, 479 U.S. at 70. "So long as the accommodation offered by the employer reasonably balances the employee's observance of [his or] her religion with the employer's legitimate interest, it must be deemed acceptable." Miller v. Port Authority of New York & New Jersey, 351 F. Supp. 3d 762, 779 (D.N.J. 2018), aff'd, No. 18-3710, 2019 WL 5095749 (3d Cir. Oct. 11, 2019) (quoting Cloutier v. Costco Wholesale, 311 F.Supp.2d 190, 200 (D. Mass. Mar. 30, 2004)).

Numerous courts have concluded that an offer to help an employee find another positttion that does not require Sabbath work is a reasonable accommodation, even if the other position pays less or is less desireable.  See, e.g., Walker v. Indian River Transp. Co., 741 F. App'x 740, 747 (11th Cir. 2018) (because assigning employee to different driving route was the "only way to ensure that he would not have mandatory Sunday work," the "fact that at least some of those routes happened to pay less" was insufficient to render accommodation unreasonable); Telfair, 567 F. App'x at 684 (FedEx's offer to move employees to different positions, albeit lower paying ones, that would have satisfied their scheduling criteria was reasonable accommodation); Bruff, 244 F.3d at 502, n.23 (noting that "a significant reduction in salary" was insufficient on its own to make accommodation unreasonable).  See also Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 73 (1977) (requiring employee to take unpaid leave to observe religious practices was reasonable).

In this instance, neither side submitted any specific evidence about the salary ranges of hourly management positions compared to the assistant manager position.  The only evidence in the record is that hourly manager positions paid "a little less" than the assistant manager position, required fewer hours and provided the opportunity for overtime.  It is difficult to evaluate the reasonableness of the accommodation without more information about the jobs for which Hedican could have applied.

However, defendant is not solely to blame for this missing evidence.  It is well-established that employees have a duty to cooperate with an employer in searching for an accommodation for religious needs.  Philbrook, 479 U.S. at 68.  See also Porter, 700 F.3d

at 953 (employer and employee must engage in "bilateral cooperation" in attempting to find reasonable accommodation for religious needs); <u>Brener</u>, 671 F.2d at 146 ("Although the statutory burden to accommodate rests with the employer, the employee has a correlative duty to make a good faith attempt to satisfy his needs through means offered by the employer."). Courts have rejected Title VII religious accommodation claims because the plaintiff employee failed to engage with the employer regarding the employer's accommodation proposal. <u>See, e.g.</u>, <u>Walden v. Centers for Disease Control & Prevention</u>, 669 F.3d 1277, 1294 (11th Cir. 2012) (affirming summary judgment to employer where employee failed to "make a good faith attempt to accommodate her needs through the offered accommodation"); <u>Shelton</u>, 223 F.3d at 228 (affirming summary judgment to employer where employee's "refusal to cooperate in attempting to find acceptable religious accommodation was unjustified"). In this case, Hedican declined to apply for any open positions with defendant and declined to even explore with human resources manager Ahern what other positions were open. Ahern offered to help Hedican apply for positions, but he never contacted Ahern. Under the circumstances, I conclude that Hedican failed to satisfy his duty to make a good faith effort to cooperate with defendant in finding a reasonable accommodation. He cannot now complain that the proposed alternative hourly management positions identified by defendant would not have been reasonable accommodations.

In sum, plaintiff's need for Saturdays off meant that he lacked the flexibility required for the assistant manager position, so defendant attempted to accommodate him by inviting

him to apply for hourly managerial positions that would not require mandatory Saturday work. This accommodation was reasonable because it eliminated the conflict between plaintiff's employment requirements and his religious practices. Philbrook, 479 U.S. at 70. Because defendant has shown that it offered Hedican a reasonable accommodation, and that plaintiff failed to make a good-faith effort to engage with defendant regarding the proposed accommodation, plaintiff's Title VII claim fails.

## B. Undue Hardship

If an employer reasonably accommodates an employee's religious needs, the employer is not required to show that the employee's alternative accommodation proposals would result in undue hardship. Philbrook, 479 U.S. at 68 (noting that undue hardship on employee's business is at issue only when employer fails to offer any accommodation). However, I will briefly discuss the parties' arguments regarding undue hardship for the sake of completeness.

Undue hardship exists when a religious accommodation would cause more than minimal hardship to the employer or other employees. Hardison, 432 U.S. at 81 ("To require TWA to bear more than a de minimis cost in order to give Hardison Saturdays off is an undue hardship."). For example, the cost of hiring an additional worker or the loss of production that results from not replacing a worker who is unavailable due to a religious conflict can amount to undue hardship. Tabura, 880 F.3d at 557–58.

Plaintiff proposes several potential accommodations that it says defendant could have

offered Hedican that would have accommodated his request to abstain from work on his Sabbath. In particular, plaintiff says that defendant could have permitted Hedican to swap shifts with other assistant managers, use personal time off, have a flexible arrival time, schedule him for a day shift Sunday through Friday, schedule him for overnight shifts or schedule him to work shorter shifts. However, plaintiff's suggestions do not fully address defendant's undisputed evidence that: (1) no assistant manager is assigned to a permanent shift; (2) assistant managers are expected to be available to work varied shifts, including Saturdays; (3) assistant managers are expected to rotate through every area of the store; (4) Saturday was a busy day for the Hayward store, and all assistant managers were expected to work some Saturday shifts; (5) other assistant managers wanted Saturdays off as well; and (6) Hedican would not have any paid personal time off until he had worked for defendant for a full fiscal year.

Plaintiff contends that all of defendant's arguments about hardship are conclusory or are based on pure speculation, but I disagree. Defendant submitted sworn statements from its employees who are familiar with the Hayward store's operational needs. Both Buck and Ahern have sufficient personal knowledge regarding the store's customer base, services and staffing needs to support their statements regarding the assistant manager's role at the Hayward store. As the store manager, Buck's testimony about scheduling, time-off requests and Saturday operational needs is not hypothetical or speculative.

Morever, many of Ahern's conclusions are supported by common sense. It was logical for Ahern to conclude that if Hedican could not work during his Sabbath hours, then some

other assistant manager would have to do so, or the store would be short-handed.  It was also logical for her to conclude that it would be difficult or impractical for Hedican to attempt to swap shifts with other assistant manager, in light of the small pool of assistant managers who were not scheduled to work on any given Saturday and the fact that weekends were the most requested time off by other assistant managers.

Title VII does not require employers to deny the shift preferences of some employees in order to favor the religious needs of others.  <u>Hardison</u>, 432 U.S. at 81, 84.  Title VII does not contemplate "unequal treatment" between those employees with religious reasons for avoiding working on certain days and those who have "strong, but perhaps nonreligious reasons for not working on weekends."  <u>Id.</u>  In addition, an accommodation that requires other employees to assume a disproportionate workload is an undue hardship as a matter of law.  <u>Noesen v. Medical Staffing Network, Inc.</u>, 232 F. App'x 581, 584 (7th Cir. 2007).  As defendant points out, hiring an assistant manager who could never work Saturdays would require defendant to choose between requiring another manager to work on additional Saturdays (which would give improper preference Hedican's religious request for time off over other requests), hiring another manager who could help cover those shifts (which would be an extra cost) or operating the store with one less manager than needed (which would create operational inefficiencies and lost sales).  Under these circumstances, I conclude that defendant has shown that it would be an undue hardship to provide the accommodations that plaintiff requests.

ORDER

IT IS ORDERED that defendant Walmart Stores East, LP and Walmart, Inc.'s motion for summary judgment, dkt. #37, is GRANTED. The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 16th day of January, 2020.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge